**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLORADO**

Civil Action No. ______________

SOUTHERN UTE INDIAN TRIBE,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR,
SALLY JEWELL, in her official capacity as Secretary of the Interior,
JANICE M. SCHNEIDER, in her official capacity as Assistant Secretary, Land and Minerals Management,
BUREAU OF LAND MANAGEMENT, and
NEIL KORNZE, in his official capacity as Director of the Bureau of Land Management,

Defendants.

---

**COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## INTRODUCTION

The Southern Ute Indian Tribe ("Tribe") respectfully petitions the Court for review of final agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Local Rules of Practice of the United States District Court for the District of Colorado – AP Rules. On March 26, 2015, the Bureau of Land Management, United States Department of the Interior ("BLM"), published in the Federal Register a final rule regulating hydraulic fracturing, entitled "Oil and Gas; Hydraulic Fracturing on Federal and Indian Lands" ("BLM Final Rule"). 80 Fed. Reg. 16128 (Mar. 26, 2015) (to be codified at 43 C.F.R. Part 3160). The BLM Final Rule cites the Indian Mineral Leasing Act of 1938 (25 U.S.C. §§ 396a—396g) and the Indian Mineral Development Act of 1982 (25 U.S.C. §§ 2101—2108) as the statutory authority for the BLM's

inclusion of tribally leased lands within the scope of the BLM Final Rule. As promulgated, however, the BLM Final Rule conflicts with legal rights of the Tribe and with the policies of tribal self-determination and self-governance that underlie the Indian Mineral Leasing Act and the Indian Mineral Development Act. For that reason and for the reasons set forth more fully below, the BLM Final Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1362 (actions by Indian tribes), 28 U.S.C. § 1367 (supplemental jurisdiction), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

2. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the United States Department of the Interior and the BLM are agencies of the United States government; Sally Jewell, Janice M. Schneider, and Neil Kornze are officers or employees of the United States or an agency thereof; and the actions complained of relate to public and Indian lands in the District of Colorado.

## PARTIES

3. The Tribe is a federally recognized Indian tribe organized under the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 – 479. See 80 Fed. Reg. 1942, 1946 (Jan. 14, 2015).

4. Defendant United States Department of the Interior is an executive department within the executive branch of the United States.

5. Defendant Sally Jewell is Secretary of the Interior ("Secretary").

6. Defendant Janice M. Schneider is Assistant Secretary – Land and Minerals Management within the United States Department of the Interior.

7. Defendant BLM is a bureau within the United States Department of the Interior. Among other functions, the BLM is responsible for subsurface management of mineral development under Indian lands that are subject to certain Secretarially approved mineral leases.

8. Defendant Neil Kornze is Director of the BLM.

**TRIBAL MINERAL LEASING STATUTES**

9. The statutory authorities cited and relied upon by the BLM in promulgating the BLM Final Rule include 25 U.S.C. § 396d of the Indian Mineral Leasing Act of 1938 and 25 U.S.C. § 2107 of the Indian Mineral Development Act of 1982. 80 Fed. Reg. 16128, 16217 (Mar. 26, 2015).

**Indian Mineral Leasing Act**

10. The Indian Mineral Leasing Act of 1938 is a comprehensive statute governing the mineral leasing of tribal lands, enacted for purposes that included the revitalization of tribal governments organized under the Indian Reorganization Act and the promotion of tribal economic development.

11. The Indian Mineral Leasing Act preserved the right of Indian Reorganization Act tribes, like the Tribe, to lease tribal lands for mining purposes under their Indian Reorganization Act charters or constitutions. See 25 U.S.C. § 476(e) (vesting in IRA tribes the power to "prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe").

12. Preservation of the power of Indian Reorganization Act tribes to control the leasing of their lands under the Indian Mineral Leasing Act is reiterated in 25 C.F.R. § 211.29, which expressly recognizes the right of Indian Reorganization Act tribes to supersede, through tribal legislative enactment, the 25 C.F.R. Part 211 regulations, which incorporate the Bureau of Land Management regulations by reference at 25 C.F.R. § 211.4.

**Indian Mineral Development Act**

13. In 1982, Congress adopted the Indian Mineral Development Act, 25 U.S.C. §§ 2101-2108, which was designed by Congress "first, to further the policy of [tribal] self-determination and second, to maximize the financial return tribes can expect for their valuable mineral resources." S. REP. No. 97-472, at 2 (1982).

14. To achieve those purposes, the Indian Mineral Development Act authorized tribes to enter into negotiated mineral development agreements, subject to approval by the Secretary under prescribed time and scope limitations. 25 U.S.C. §§ 2102, 2103.

**ADMINISTRATIVE PROCEDURES ACT**

15. The APA provides a right of action to an aggrieved party against final agency actions and decisions. 5 U.S.C. §§ 702, 704.

16. Reviewing courts shall hold unlawful and set aside agency actions or decisions that are "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

17. Absent an applicable special statutory review proceeding, the form of proceeding for judicial review may be any applicable form of legal action, including actions for declaratory judgments and injunctive relief. 5 U.S.C. § 703.

**FACTS AND GENERAL ALLEGATIONS**

18. The United States owns in trust for the benefit of the Tribe hundreds of thousands of mineral acres located within the Southern Ute Indian Reservation in southwestern Colorado.

19. The Tribe, in exercise of its rights under the Indian Mineral Leasing Act of 1938 and the Indian Mineral Development Act of 1982, has leased substantial portions of its lands for mineral resource development to numerous oil and gas companies, including the Tribe's oil and gas company, Red Willow Production Company.

20. Red Willow Production Company, which is a division of the Tribe, is the designated operator of hundreds of wells that have been drilled on lands subject to leases and mineral agreements issued by the Tribe and approved by the authorized representative of the Secretary under the Indian Mineral Leasing Act and the Indian Mineral Development Act.

21. The categories of revenues received by the Tribe from the mineral development of its leased lands typically include: bonuses, rentals, royalties, severance taxes, working interest revenues, and overriding royalties. Additionally, the mineral development activities generate other associated funds that include permit and permission fees, surface damage compensation, and revenues associated with the treating and gathering of natural gas by Red Cedar Gathering Company, in which the Tribe holds a majority ownership interest.

22. The Tribe relies upon such revenues to help fund its government, facilities and programs, including without limitation the Tribe's schools, health facilities, education programs, police and justice systems, social services programs, recreation facilities, cultural preservation, elder retirement and administration.

23. Hydraulic fracturing has been used by operators to achieve or enhance production from the majority of wells drilled and completed on the Tribe's lands, and Red Willow Production Company and other oil and gas companies operating on leased lands of the Tribe will need to engage in hydraulic fracturing to continue developing and producing tribal minerals.

24. The Tribe provided extensive comments to the BLM on the BLM's proposed hydraulic fracturing rule. In those comments, the Tribe demonstrated that some of the BLM's proposed technical requirements were unnecessary and overly burdensome. Further, for policy and legal reasons, the Tribe requested that "Indian lands be treated differently. A 'one size fits all' approach that encompasses both tribal and federal lands will simply add to the already burdensome federal pre-requisites for developing tribal minerals." In addition, the Tribe reminded the BLM that the Tribe's powers as an Indian Reorganization Act tribe included the power to supersede BLM regulations incorporated by reference in the regulations governing the leasing of tribal lands under the Indian Mineral Leasing Act. The BLM, however, refused to recognize the right of Indian tribes to opt out of the BLM Final Rule. 80 Fed. Reg. at 16132.

25. On June 16, 2015, pursuant to its inherent powers and its powers under the Tribe's Secretarially approved Constitution as an Indian Reorganization Act tribe, the Tribe's governing body, the Southern Ute Indian Tribal Council, adopted Resolution No. 2015-98, which approved Southern Ute Indian Tribe – Hydraulic Fracturing and Chemical Disclosure Regulations.

26. As allowed under 25 CFR § 211.29, in adopting Resolution No. 2015-98, the Tribal Council expressly confirmed that the Southern Ute Indian Tribe – Hydraulic Fracturing and Chemical Disclosure Regulations supersede the BLM Final Rule on tribal lands subject to the jurisdiction of the Southern Ute Indian Tribe, if and when the BLM Final Rule becomes effective.

27. The BLM Final Rule is set to become effective on June 24, 2015. 80 Fed. Reg. at 16128.

**CLAIMS FOR RELIEF**

28. The BLM's issuance of the BLM Final Rule constitutes a final agency action subject to review by this Court. 5 U.S.C. §§ 551(13), 704.

29. The BLM Final Rule permits an Indian tribe to request a variance from application of the BLM Final Rule to its leased mineral lands, but the appropriate BLM State Director may approve such a request only if tribal law “meets or exceeds the objectives of the rule.” 80 Fed. Reg. at 16221.

30. The limited nature of the tribal variance provisions set forth in the BLM Final Rule conflicts with the Indian Mineral Leasing Act and its implementing regulations and unlawfully restricts the Tribe’s power under the Indian Reorganization Act, the Indian Mineral Leasing Act and 25 C.F.R. 211.29, to supersede the regulations contained in 25 C.F.R. Part 211 (including the BLM regulations incorporated therein by reference, and most particularly the BLM Final Rule).

31. The BLM Final Rule unlawfully interferes with the powers of the Tribe under the Indian Reorganization Act and the Indian Mineral Development Act to establish the terms and conditions and the rules governing activities undertaken on the Tribe’s lands under mineral agreements entered into under the Indian Mineral Development Act.

32. The BLM lacks the delegated regulatory authority to promulgate and apply the BLM Final Rule to the Tribe’s lands subject to minerals agreements under the Indian Mineral Development Act.

33. The BLM Final Rule is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law” because it is inconsistent with the policies of tribal self-determination and tribal self-governance underlying the Indian Reorganization Act, Indian Mineral Leasing Act and the Indian Mineral Development Act.

## PRAYER FOR RELIEF

WHEREFORE, the Tribe requests that the Court:

A. Declare that the variance provisions of the BLM Final Rule unlawfully, arbitrarily and unreasonably interfere with the rights of the Tribe, as an Indian Reorganization Act tribe, to lease its lands under the Indian Mineral Leasing Act, specifically 25 U.S.C. § 396b and its implementing regulations, and interfere with the right of the Tribe to supersede the 25 C.F.R. Part 211 regulations, including incorporated BLM regulations, through adoption of a duly authorized ordinance, resolution, or other action;

B. Declare that the Defendants violated the Administrative Procedure Act in promulgating the BLM Final Rule because it conflicts with the Indian Reorganization Act, the Indian Mineral Leasing Act, the Indian Mineral Development Act, and regulations implementing the same;

C. Declare that the BLM does not have the delegated authority to implement the BLM Final Rule on Indian lands that are subject to minerals agreements or other agreements entered into under the Indian Mineral Development Act;

D. Set aside and vacate the BLM Final Rule to the extent that the BLM Final Rule violates the powers of the Tribe over its lands as recognized by Federal statutes and regulations;

E. Enter other temporary, preliminary, or permanent injunctive relief as the Tribe may specifically seek; and

F. Grant the Tribe such additional relief as the Court deems just and proper to remedy Defendants' violations of law and protect the Tribe's interests.

Respectfully submitted this 18th day of June, 2015.

/s/ *Thomas H. Shipps*
Thomas H. Shipps
Sam W. Maynes
Jeffrey M. Kane
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
(970)247-1755 // Facsimile(970) 247-8827
E-mail: tshipps@mbssllp.com
smaynes@mbssllp.com
jkane@mbssllp.com

/s/ *Lorelyn Hall*
Lorelyn Hall
Legal Department Director
Southern Ute Indian Tribe
P.O. Box 737
Ignacio, Colorado 81137
(970) 970.563.4803
E-mail:lhall@southernute-nsn.gov

*ATTORNEYS FOR THE SOUTHERN UTE INDIAN TRIBE*

Plaintiff's name and address: Southern Ute Indian Tribe
P.O. Box 737
Ignacio, Colorado, 81137