**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 15-cv-01303-MSK

**SOUTHERN UTE INDIAN TRIBE,**

    Plaintiff,

v.

**U.S. DEPARTMENT OF THE INTERIOR,
SALLY JEWELL,** in her official capacity as Secretary of the Interior,
**JANICE M. SCHNIEDER,** in her official capacity as Assistant Secretary, Land and Minerals Management,
**BUREAU OF LAND MANAGEMENT,** and
**NEIL KORNE,** in his official capacity as Director of the Bureau of Land Management,

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING**
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction **(# 6)**.

## FACTS

    In their Complaint **(# 1)**, the Plaintiff Southern Ute Indian Tribe ("the Tribe") brings a challenge to the Bureau of Land Management's ("BLM") March 26, 2015 Final Rule ("the Rule") governing the use of hydraulic fracturing techniques in oil and gas development on federal and Indian lands. 80 Fed.Reg. 16128 (Mar. 26, 2015). The Tribe contends that the Rule violates the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, because it "unlawfully interferes with the powers of the Tribe under the Indian Reorganization Act [25 U.S.C. § 461 *et seq.*] and the Indian Mineral Development Act [25 U.S.C. § 2101 *et seq.*] to establish the terms

1

and conditions and the rules governing activities undertaken on the Tribe's lands." The Tribe commenced this action on June 18, 2015, and on June 22, 2015, filed the instant Motion for Temporary Restraining Order and Preliminary Injunction **(# 6)**, requesting that the Court "prohibit[ ] the Defendants from implementing the BLM Final Rule on the Tribe's lands during the pendency of this case." The Rule is scheduled to take effect on June 24, 2015.

## ANALYSIS

To obtain a Temporary Restraining Order on an *ex parte* basis under Fed.. R. Civ. P. 65(b), a party must first make the showing required by Rule 65(b)(1)(A) and (B) – that is, it must: (i) show the existence of an "immediate and irreparable injury, loss, or damage that will result to the movant before the adverse party can be heard in opposition," such showing to be made by "specific facts in an affidavit or a verified complaint"; and (ii) supply a certification from "the movant's attorney," showing "any efforts made to give notice and the reasons why it should not be required." If the movant satisfies this threshold requirement, the Court then considers whether a Temporary Restraining Order should issue by considering the traditional standards governing preliminary injunctive relief, considering: (i) whether the movant will suffer irreparable injury unless the injunction issues; (ii) whether the threatened injury outweighs whatever damage the proposed injunction will cause the non-movant; (iii) whether the requested injunction is adverse to the public interest; and (iv) whether there is a substantial likelihood of the movant succeeding on the merits. *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005).

The Court finds that the Tribe has not made a showing of the requisite imminent, irreparable injury.

As a preliminary matter, the Court notes that the Tribe's delay in seeking relief suggests that there is no likely imminent injury that will be caused by the Rule becoming effective. The BLM's Final Rule was published on March 26, 2015. At that point in time, the Tribe was fully aware of the Final Rule's requirements and, concomitantly, the alleged defects in the Rule that now underlie the Tribe's claims here. The Final Rule expressly provided that it would become effective on June 24, 2015. Rather than promptly challenging the Rule well in advance of the effective date (thus giving the parties and the Court the luxury of time to carefully address and evaluate the issues), the Tribe waited until June 18, 2015, less than a week before the effective date of the Rule, to bring this challenge, and until June 22, 2015, two days before the Rule's effective date, to seek injunctive relief. Nothing in the record reveals any reasons why the Tribe was unable to diligently commence this action and seek injunctive relief earlier – the Tribe does not, for example, contend that BLM representatives induced the Tribe to delay suit until the last minute based upon promises of further negotiations over the Rule's operation or demonstrate that the Tribe was unable to discover the existence of some critical fact until the very eve of the Rule's effectiveness.[1] In such circumstances, the "imminence" of the alleged injury, and the corresponding need for *ex parte* relief to prevent it, is less a function of the Defendants' actions and more a function of the Tribe's own unexplained delay in bringing suit. A movant's delay in seeking injunctive relief "cuts against finding irreparable injury." *RoDa Drilling Co. v. Segal*, 552 F.3d 1203, 1211 (10th Cir. 2009). Here, the Tribe's failure to explain why it did not or

---

[1] The fact that the Tribe only recently passed its own regulatory framework for addressing hydraulic fracturing does not alter this analysis. The Tribe acknowledges that the Final Rule includes a mechanism by which Tribes may request a "variance" from the Rule from the BLM if the BLM determines that tribal rules adequately address the BLM's concerns, but the Tribe seems to suggest that it has not applied for such a variance and does not intend to do so. Thus, the Tribe cannot be heard to say that it was unable to file this suit until it had promulgated its own tribal regulations, sought a variance from the BLM, and was denied.

could not bring its request for injunctive relief earlier warrants this Court giving some weight to that unexplained delay when conducting its irreparable harm analysis. *Id.*

Turning to whether there is irreparable harm, the Tribe describes the anticipated harm as "harm to the Tribe's sovereign interests." It does not generally elaborate. As the Court understands the argument, the Tribe is largely articulating a sort of conceptual or philosophical harm rather than any tangible injury: that allowing the BLM to assert the ability to regulate certain aspects of hydraulic fracturing activities on Indian lands illustrates a disrespect for or diminishment of the Tribe's rights as a sovereign over its lands, but does not necessarily effect any immediate direct and tangible harm to the Tribe's finances or contractual rights with its existing oil and gas operations. Nor does the Tribe identify any currently-pending drilling applications or permits it is prepared to issue imminently that would arguably be affected by the change in regulations.[2] In short, the Tribe's claimed injury appears to be limited to the entirely conceptual notion that the Rule intrudes on its soverignty.

In support of its contention that "an invasion of tribal sovereignty can constitute irreparable injury," the Tribe cites to *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006) and cases cited therein, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001), and *Ute Indian Tribe v. State of Utah*, ___ F.3d ___, 2015 WL 3705904 (10th Cir. Jun. 16, 2015) (slip op.), among others. The Court finds none of these cases involve claims of irreparable harm arising solely from the type of conceptual harm described here. All three of the cases cited above involve efforts by <u>states</u> to regulate activities occurring on Indian

---

[2] The Tribe makes vague references to "regulatory delay" that might result from the Rule taking effect, as well as the Rule making "the Tribe's lands less attractive to operators, who may simply seek to develop adjacent private or nearby state lands rather than endure the bureaucratic uncertainties of operating on the Tribe's lands." These alleged injuries are too hypothetical to warrant immediate injunctive relief.

lands. Indian tribes enjoy a "quasi-sovereign" status that, generally, is "privileged from diminution by the States," but is subject to various forms of "plenary federal control and definition." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 890-91 (1986). Thus, cases in which state action has intruded upon Indian sovereignty might give rise to a finding that any such intrusion creates an irreparable harm, given that there will be few, if any, situations in which states can legitimately infringe on Indian sovereignty. Because the federal government enjoys broader latitude than the states do over matters on Indian lands, this Court is not necessarily inclined to assume that <u>federal</u> actions that impair Indian sovereignty in some conceptual respect will necessarily amount to an irreparable injury. The Indian Mineral Leasing Act exemplifies the extent to which the federal government has reserved to itself the ability to infringe upon Indian sovereignty: it provides that "All operations under any oil, gas, or other mineral lease . . . affecting restricted Indian lands <u>shall be subject to the rules and regulations promulgated by the Secretary of the Interior</u>." 25 U.S.C. § 396d. Because the federal government enjoys some ability to intrude upon rights of Indian sovereignty, cases recognizing the inherent irreparability of injuries caused by <u>state</u> intrusions on Indian sovereignty are not persuasive here. (Moreover, each of the cited cases involve not only purported attempts to regulate Indian activities, but actual enforcement activities such as the seizure of Indian property or the prosecution of Indian persons. Such affirmative enforcement actions elevate the injuries claimed in those cases to something more immediate and concrete than the Tribe's abstract and hypothetical "injury to sovereignty" claimed by the Tribe here.)

Accordingly, on the limited record presented to the Court and with the minimal amount of time for research and reflection occasioned by the Tribe's delay in bringing this matter to suit, the Court finds that the Tribe has failed to articulate an imminent, irreparable harm sufficient to

entitle it to an *ex parte* Temporary Restraining Order under Fed. R. Civ. P. 65(b). That portion of the instant motion is therefore denied.

It appears that the Tribe's request for preliminary injunctive relief under Rule 65(a) is identical to the final relief that it seeks in this action – an injunction against the enforcement of the Final Rule. It also appears that the issues in this matter primarily involve questions of law, not fact. In such circumstances, it may be appropriate to consolidate consideration of the Tribe's request for a preliminary injunction with trial on the merits pursuant to Rule 65(a)(2). Accordingly, the Court will conduct a non-evidentiary law and motion hearing at **11:00 a.m.** on **Tuesday, June 23, 2015** for the purpose of: (i) determining whether any other provisional forms of relief are requested or warranted pending resolution of this case; and (ii) setting a briefing schedule (and any other hearings that may be necessary) to address the merits of the Tribe's claims. The Tribe shall ensure that a copy of this Order and all filings to date are served on the United States Attorney for the District of Colorado and on the Environmental and Natural Resources Division of the U.S. Department of Justice as soon as possible, and in no event later than 3:30 p.m. MDT on June 22, 2015. Counsel who reside outside of Colorado may appear at the hearing by telephone by making arrangements with the Courtroom Deputy, Patti Glover, at 303-335-2185, by no later than 10:00 a.m. MDT on June 23, 2015.

Dated this 22d day of June, 2015 at 3:00 p.m.
.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge